only an absence of such other evidence, but there is evidence to the contrary.

With respect to Walt Disney World, we do not find the minimal contacts in New Jersey necessary for jurisdiction. See *Kislak, Inc. v. Trumbull Shopping Park,* 150 *N. J. Super.* 96 (App. Div. 1977). As was there noted, in a quotation from *Hanson v. Denckla,* 357 *U. S.* 235, 78 *S. Ct.* 1228, 2 *L. Ed.* 2d 1283 (1958), reh. den. 358 *U. S.* 858, 79 *S. Ct.* 10, 3 *L. Ed.* 2d 92 (1958), which we believe here appropriate as well:

But it is a mistake to assume that this trend [*i. e.*, a flexible and indulgent view leading to exercise of jurisdiction against nonresidents in many cases] heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. See Vanderbilt v. Vanderbilt, 354 U. S. 416, 418, 77 S. Ct. 1360, 1362, 1 L. Ed. 2d 1456, 1459. Those restrictions are more than a guarantee of immunity from inconvenient or distant litigation. They are a consequence of territorial limitations of the power of the respective States. However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the "minimal contacts" with that State that are a prerequisite to its exercise of power over him. [357 *U. S.* at 251, 78 *S. Ct.* at 1238]

We reverse and enter judgment dismissing the complaint for want of jurisdiction. Needless to say, this is not a determination on the merits and so is without prejudice.

BERNADINE SABINI, PLAINTIFF-APPELLANT, v. JAMES SABINI, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued April 11, 1978—Decided May 1, 1978.

Before Judges LORA, SEIDMAN and MILMED.

*Mr. Anthony DiLella* argued the cause for appellant.

*Mr. Frank V. Sproviero* argued the cause for respondent (*Mr. Donald R. Conway,* attorney).

PER CURIAM. Plaintiff Bernadine Sabini and defendant James Sabini were married on October 5, 1969. On July 5, 1970 the parties had the only child born of the marriage.

Plaintiff, a resident of Paterson in Passaic County, filed a complaint for divorce in Passaic County on the ground of extreme cruelty, and a supplemental complaint charging defendant, a resident of Paramus in Bergen County, with desertion. A judgment of divorce was entered in the Chancery Division, Passaic County, on August 19, 1974, which incorporated an oral agreement by the parties providing that defendant pay plaintiff $25 a week for her support, $50 a week for the support of their son, $25 a month for eight months to reimburse plaintiff $200 for a certain indebtedness, and for all extraordinary medical and dental expenses of the child. Payments were to be made through the Passaic County Probation Department.

Defendant, who earns his living as a musician and who has a somewhat erratic work schedule in that some weeks he works only a few days but in others he might work every day, fell behind in his payments to plaintiff, and on May 29, 1975, plaintiff moved to compel payment of the support and arrearages. At that time defendant was earning approximately $165–$168. Following argument on the motion, the trial judge issued an order dated June 18, 1975 requiring defendant, among other things, to continue paying the $75 a week alimony and support plus $10 a week toward the arrearages of $1,125.

Defendant again fell into arrears and plaintiff filed a motion to enforce litigant's rights in Bergen County where defendant resided on November 10, 1975. On December 12, 1975 a trial judge sitting on matrimonial matters in Bergen County signed an order compelling defendant to pay the $75 a week for alimony and support, as provided in the divorce judgment, and $10 a week towards arrearages when-

ever his income exceeded $160 a week. The order also provided that if defendant should fail to pay such support prior to January 9, 1976, then upon such letter advice to the court, a warrant for defendant's incarceration would issue without any further formal notice. On January 21, 1976 a consent order was entered by the trial judge in Bergen County extending the provision for incarceration to March 12, 1976.

On January 25, 1977 plaintiff again filed a motion for enforcement of litigant's rights in Bergen County to compel defendant to pay arrearages, which, according to the report of the Probation Office, were $3,624.50 as of January 11, 1977. In response defendant filed a cross-motion on February 4, 1977 asking the court to reduce the amount of support payments and arrearages he was liable for, on the ground of changed circumstances. His supporting affidavit stated he had remarried in October 1975, had one child by his second marriage, and his wife was expecting a second child. He was working only three nights a week at that time due to the energy crisis and was being paid a per diem rate of $50, for a salary of $150 a week. Plaintiff, meanwhile, had been employed for the past three years as a receptionist and was earning approximately $135 a week. Additionally, she had the support payments of $75 a week when they were made.

Following oral argument on February 18, 1977 the trial judge entered an order on June 13, 1977 vacating the $25 a week alimony award but requiring defendant to continue to pay $50 a week child support. He also fixed arrearages as of February 18, 1977 at $3,849, as reflected by the report of the Bergen County Probation Office, and ordered defendant to pay $10 a week towards the existing arrearages.

Plaintiff first contends on appeal that only a judge assigned to hear matrimonial actions in Passaic County has jurisdiction to modify the divorce judgment issued by the Chancery Division in Passaic County. She interprets *R.* 4:75 as providing that the only court that can modify a divorce

judgment is the court that rendered the judgment, and *R.* 4:79–9(b) as applying only to contempt proceedings under *R.* 1:10–2 or relief to the litigant under *R.* 1:10–5 for violation of the judgment.

*R.* 4:75 provides in pertinent part as follows:

Matrimonial actions shall be cognizable in the Chancery Division and heard by any judge thereof assigned to hear matrimonial actions in the county where the venue may be laid under *R.* 4:76.

Pursuant to the relevant portion of *R.* 4:76,

Matrimonial actions shall be instituted in the Superior Court and, unless the court otherwise orders, the venue shall be laid in the county in which plaintiff was domiciled when the cause of action arose.

■ Once a judgment has been rendered by a court in the Chancery Division of the county provided for in *R.* 4:76, however, the alimony and support payments that are a part of that judgment may be enforced pursuant to *R.* 4:79–9(b) by a judge sitting in the Chancery Division in the county in which the party against whom the award was made resides.

The Comment to *R.* 4:79–9 states that the rule was amended, effective September 1972, in order to

* * * permit the award to be enforced in the county in which the person against whom the award was made resides. This facilitates participation in the enforcement proceedings by the Probation Office.

Our research has disclosed no case that specifically deals with the jurisdiction of a Chancery Court in one county to modify the alimony and support provisions of a judgment by a Chancery Court in another county. The cases simply generally state that "the Chancery Division's supervision of the alimony order is a continuing one." *Bartok v. Bartok,* 52 *N. J. Super.* 266, 278 (App. Div. 1958). See *McDermott v. McDermott,* 120 *N. J. Super.* 42, 44 (Ch. Div. 1972).

In *Cabibo v. Cabibo,* 13 *N. J. Super.* 373 (Ch. Div. 1951), plaintiff wife brought an action for divorce in Mon-

mouth County. Defendant husband moved for removal to Hudson County where the parties had resided until their separation when plaintiff went to live in Monmouth County. Defendant continued to reside in Hudson County. The trial judge granted defendant's motion and ordered that the venue be changed to Hudson County, holding that the mere inconvenience of witnesses or added travel expense of plaintiff were insufficient reasons to overcome the mandatory application of the venue rule that the suit must be brought in the venue where plaintiff was domiciled when the cause of action arose. The court stated:

\* \* \* \* The rules have been carefully designed. Their purpose is to render the civil practice just and simple and to prevent unjustifiable expense and delay. Comment to remind the experienced practitioner how these purposes may be defeated by evils attendant upon a system which would permit a litigant to choose his own forum is unnecessary, and it must be conceded that the purpose of the rules will be best served by adhering to expressed provisions and not departing therefrom except for considerations of the utmost importance. [13 *N. J. Super.* at 374]

However, in *Christiansen v. Christiansen,* 46 *N. J. Super.* 101, 111 (App. Div. 1957), certif. den. 25 *N. J.* 56 (1957), this court held that while the trial judge had erred in not granting defendant's motion for transfer of the action for separate maintenance where the parties lived in Essex County when the cause of action arose but plaintiff brought the action in Union County where she resided at the time the complaint was filed, and notwithstanding the "mandatory application" of the venue rule, its "study of the entire proceedings fails to disclose that any prejudice resulted to the defendant from the error and consequently it does not provide a basis for interfering with the final result of the trial."

Here, there is no doubt that under *R.* 4:79–9(b) plaintiff properly could apply for relief in the Chancery Division of Bergen County because defendant resided in that county. We are of the view the rationale for the rule creating such venue, *i. e.,* facilitating participation in the enforcement pro-

ceedings by the Probation Office, is equally applicable to a defendant's bringing a cross-motion for reduction of alimony and support in the county in which an enforcement proceeding has been initiated by a plaintiff.

Moreover, it is well established that whenever possible, multiplicity of litigation should be avoided and all aspects of a controversy should be settled in a single legal proceeding. See, e. g., N. J. Const. (1947), Art. VI, § III, par. 4; Falcone v. Middlesex Cty. Med. Soc., 47 N. J. 92, 93 (1966) ; Leisure Technology v. Klingbeil, 137 N. J. Super. 353, 357 (App. Div. 1975). As explained in Applestein v. United Board & Carton Corp., 35 N. J. 343 (1961).

> * * * The sound administration of a judicial system requires that all facets of a single dispute between parties be completely determined in one action. * * * To implement this policy of judicial administration, we have held that a defendant must assert all matters which will defeat a claim against him and a plaintiff must seek complete relief for vindication of the wrong he charges. [at 356]

Plaintiff further contends that defendant's affidavit did not show a change in circumstances sufficient to warrant a reduction of alimony and that there being contested issues of fact and questions of credibility raised by the affidavits, the trial judge should have set the matter down for a plenary hearing.

Our review of the record leads us to conclude that there is no merit to the contentions of plaintiff and that the order of the Chancery Division modifying the terms of the judgment of divorce be affirmed. R. 2:11-3(e)(1)(A)(E). See also, Shaw v. Shaw, 138 N. J. Super. 436, 440 (App. Div. 1976).

Plaintiff's motion to enforce litigant's rights and for an order reducing arrearages to judgment should properly be addressed to the trial court.

Affirmed.